U.S. v. Emerson                          CV-94-152-JD  03/29/95
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE

United States of America

        v.                                  Civil No. 94-152-JD

Alan D. Emerson, Ind.
and d/b/a Emerson Aviation


                              O R D E R


     The plaintiff, the United States of America, has brought

this action against the defendants, Alan Emerson d/b/a/ Emerson

Aviation ("Emerson Aviation") and Alan Emerson, individually, to

recover a civil penalty of $320,000 for past violations of

federal aviation law and to permanently enjoin future violations.

Before the court is the defendants' motion to dismiss (document

no. 11) for lack of subject matter jurisdiction.  Rule 12(b)(1),

Fed. R. Civ. P.[1]

                             Background

     On May 12, 1992, the Federal Aviation Administration ("FAA")

issued an emergency order of revocation revoking the airman

_____

     [1]The court notes that the defendants have previously filed
an answer (document no. 8) and that ordinarily motions brought
pursuant to Rule 12(b), Fed. R. Civ. P. must be filed "before
pleading if a further pleading is permitted."  Id.  However, Rule
12(h)(3) provides, "Whenever it appears by suggestion of the
parties or otherwise that the court lacks jurisdiction of the
subject matter, the court shall dismiss the action."  Therefore
the defendants Rule 12(b)(1) motion was timely filed.

certificate of Alan Emerson.  At all relevant times Emerson did not hold the operating certificate required for air taxi commercial operators.  Further, the plaintiff alleges that during the period from November 11, 1992, through July 28, 1993, Emerson did not possess the operations specifications required under federal regulations to engage in the carriage of persons or property in air commerce for compensation or hire.  Complaint, ¶ 8.

The plaintiff alleges that on eight separate occasions from November 11, 1992, to June 18, 1993, defendants Alan Emerson, individually, and Alan Emerson d/b/a Emerson Aviation operated, or caused or authorized others to use civil aircraft registration number N3570M (a Piper PA-34-200T Seneca) or civil aircraft registration number N30DF (a Piper PA-31) on round-trip passenger flights for compensation or hire from Laconia, New Hampshire, to Albany, New York.  Complaint, ¶ 10.  The plaintiff further alleges that on fifteen separate occasions from March 11, 1993, to July 28, 1993, the defendants operated, or caused or authorized others to use civil aircraft registration numbers N3570M or N30DF on round-trip passenger flights for compensation or hire from Laconia, New Hampshire, to Islip, New York.  Id., ¶ 11.  According to the plaintiff, when the defendants authorized others to operate the flights at issue, these individuals were

2

not qualified pilots under 14 C.F.R. §§ 135.293(a)[2]  and

---

[2]Title 14 C.F.R. § 135.293 provides,

## § 135.293  Initial and recurrent pilot testing requirements.

(a) No certificate holder may use a pilot, nor may any person serve as a pilot, unless, since the beginning of the 12th calendar month before that service, that pilot has passed a written or oral test, given by the Administrator or an authorized check pilot, on that pilot's knowledge in the following areas---

(1) The appropriate provisions of parts 61, 91, and 135 of this chapter and the operations specifica-tions and the manual of the certificate holder;

(2) For each type of aircraft to be flown by the pilot, the aircraft powerplant, major components and systems, major appliances, performance and operating limitations, standard and emergency operating pro-cedures, and the contents of the approved Aircraft Flight Manual or equivalent, as applicable;

(3) For each type of aircraft to be flown by the pilot, the method of determining compliance with weight and balance limitations for takeoff, landing and en route operations;

(4) Navigation and use of air navigation aids appropriate to the operation or pilot authorization, including, when applicable, instrument approach facilities and procedures;

(5) Air traffic control procedures, including IFR procedures when applicable;

(6) Meteorology in general, including the principles of frontal systems, icing, fog, thunder-storms, and windshear, and, if appropriate for the operation of the certificate holder, high altitude weather;

(7) Procedures for---

(i) Recognizing and avoiding severe weather situations;

(ii) Escaping from severe weather situations, in case of inadvertent encounters, including low-altitude windshear (except that rotorcraft pilots are not required to be tested on escaping from low-altitude windshear); and

135.295.[3]  Id., ¶ 14.  The plaintiff further alleges that in

_____

   (iii) Operating in or near thunderstorms (including best penetrating altitudes), turbulent air (including clear air turbulence), icing, hail, and other potentially hazardous meteorological conditions; and
   (8) New equipment, procedures, or techniques, as appropriate.

14 C.F.R. § 135.293(a) (1994).

[3]Title 14 C.F.R. § 135.295 provides,

**§ 135.295  Initial and recurrent flight attendant crewmember testing requirements.**

   No certificate holder may use a flight attendant crewmember, nor may any person serve as a flight attendant crewmember unless, since the beginning of the 12th calendar month before that service, the certificate holder has determined by appropriate initial and recurrent testing that the person is knowledgable and competent in the following areas as appropriate to assigned duties and responsibilities---
   (a) Authority of the pilot in command;
   (b) Passenger handling, including procedures to be followed in handling deranged persons or other persons whose conduct might jeopardize safety;
   (c) Crewmember assignments, functions, and responsibilities during ditching and evacuation of persons who may need the assistance of another person to move expeditiously to an exit in an emergency;
   (d) Briefing of passengers;
   (e) Location and operation of portable fire extinguishers and other items of emergency equipment;
   (f) Proper use of cabin equipment and controls;
   (g) Location and operation of passenger oxygen equipment;
   (h) Location and operation of all normal and emergency exits, including evacuation chutes and escape routes; and
   (i) Seating of persons who may need assistance of another person to move rapidly to an exit in an

4

connection with the above-mentioned flights the defendants violated 14 C.F.R. § 135.31[4] by advertising or otherwise offering to perform charter flight operations for which they failed to possess either the proper certification or the required operations specifications. Complaint, ¶ 15.

Pursuant to the Federal Aviation Act at 49 U.S.C.A. § 1471, the plaintiff contends that each defendant is subject to a civil penalty not to exceed $10,000 for each of the thirty-two violations alleged in the complaint, for a total not to exceed $320,000. Complaint, ¶ 16.

On February 14, 1995, the court issued a preliminary injunction requiring, <u>inter alia</u>, that each of the defendants refrain from performing any aviation related acts unless and until they validly possess the proper FAA authority to do so.

---

emergency as prescribed by the certificate holder's operations manual.

14 C.F.R. § 135.295 (1994).

[4]Title 14 C.F.R. § 135.31 provides,

**§ 135.31  Advertising.**

No certificate holder may advertise or otherwise offer to perform operations subject to this part that are not authorized by the certificate holder's operating certificate and operations specifications.

14 C.F.R. § 135.31 (1994).

5

## Discussion

The defendants assert, _inter alia_, that the court lacks subject matter jurisdiction to adjudicate the plaintiff's claims because the plaintiff has not exhausted its administrative remedies before the National Transportation Safety Board ("NTSB"), that the plaintiff's claims are untimely under the NTSB's "stale complaint" rule, that the FAA lacks authority to maintain its claims, and that the excercise of the court's jurisdiction would violate the double jeopardy clause of the United States Constitution. _See_ Plaintiff's Motion to Dismiss ("Motion to Dismiss") at ¶¶ 3-7. In response, the government argues that the court's exercise of subject matter jurisdiction is consistent with the governing statutes and would not impinge on the defendants' constitutional rights.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P., challenges the statutory or constitutional power of the court to adjudicate a particular case. 2A Moore's Federal Practice ¶ 12.07 (2d ed. 1994). In ruling upon a motion to dismiss for lack of subject matter jurisdiction, "the allegations of the complaint should be construed favorably to the pleader." _Scheuer v. Rhodes_, 416 U.S. 232, 236 (1974).

I.  Statutory Authority for Federal District Court
Jurisdiction

The plaintiff asserts that the court has exclusive jurisdiction over its action pursuant to the appropriate federal statutes.  Government's Objection to Defendants' Motion to Dismiss at 2-6.  Under 49 U.S.C.A. § 1430,

(a) It shall be unlawful---

* * * *

(2) For any person to serve in any capacity as an airman in connection with any civil aircraft, aircraft engine, propeller or appliance used or intended for use, in air commerce without an airman certificate authorizing him to serve in such capacity, or in violation of any term, condition, or limitation thereof, or in violation of any order, rule, or regulation issued under this subchapter.

(4) For any person to operate as an air carrier without an air carrier operating certificate, or in violation of the terms of any such certificate;

(5) For any person to operate aircraft in air commerce in violation of any other rule, regulation, or certificate of the Administrator under this subchapter.

49 U.S.C.A. § 1430(a)(2)(4)(5) (West 1976).  Section 1430 is contained in subchapter VI of the Federal Aviation Act, which addresses the safety regulation of civil aeronautics.  See 49 U.S.C.A. §§ 1421-1432 (subchapter VI).  The regulations at issue, 14 C.F.R. §§ 135.31, 135.293 and 135.295, were promulgated

7

pursuant to subchapter VI.  <u>See</u> Air Taxi Operators and Commercial Operators Rules, 14 C.F.R. Part 135 at 578 (1994) (indicating that Part 135 was promulgated pursuant to 49 U.S.C. §§ 1421-1431, in addition to 49 U.S.C. §§ 1354(a) (stating certain broad powers and duties of the Administrator), 1355(a) (authorizing the Administrator to delegate powers and duties related to the issuance of certificates under subchapter VI), 1502 (dealing with international agreements) and 49 U.S.C. § 106(g) (revised Pub. L. No. 97-449, January 12, 1983) (authorizing the FAA administrator to carry out certain duties of the Secretary of Transportation).

In pertinent part, 49 App. U.S.C.A. § 1471 provides,

> (a)(1) Any person who violates (A) any provision of subchapter III, IV, V, VI, VII, or XII of this chapter or of section 1501 or 1514, or 1515(e)(2)(B) of this title or any rule, regulation, or order issued thereunder, or under section 1482(i) of this title, or any term, condition, or limitation of any permit or certificate issued under subchapter IV of this chapter, or (B) any rule or regulation issued by the United States Postal Service under this chapter, shall be subject to a civil penalty of not to exceed $1,000 for each such violation, except that a person who operates aircraft for the carriage of persons or property for compensation or hire (other than an airman serving in the capacity of an airman) shall be subject to a civil penalty of not to exceed $10,000 for each violation of subchapter III, VI, or XII of this chapter, or any rule, regulation, or order issued thereunder, occurring after December 30, 1987.

* * * *

**(3) Administrative assessment**

**(A) General authority**

Upon written notice and finding of a violation by the Administrator, the Administrator, or the delegate of the Administrator, may assess a civil penalty for a violation of subchapter III, V, VI, or XII of this chapter or subsections (c) and (d) of this section, section 1501 or 1515(e)(2)(B) of this title or any rule, regulation, or order issued thereunder.

\* \* \* \*

**(C) Continuing jurisdiction of district courts**

Nothwithstanding subparagraph (A), the United States district courts shall have exclusive jurisdiction of any civil penalty initiated by the Administrator---

(i) which involves an amount in controversy in excess of $50,000.

\* \* \* \*

(iv) in which a suit for injunctive relief based on the violation giving rise to the civil penalty has also been brought.

49 App. U.S.C.A. §§ 1471(a)(1), 1471(a)(3)(A), 1471(a)(3)(C)(i) and (iv) (West 1994).

The defendants are charged with thirty-two violations of regulations promulgated under 49 U.S.C.A. § 1430(a)(2), (4) and (5). Pursuant to 49 App. § 1471(a)(1), each of these violations carries a civil penalty not to exceed $10,000; thirty-two violations carry an aggregate civil penalty not to exceed

9

$320,000.  Because this amount in controversy exceeds $50,000 the court has exclusive jurisdiction over the plaintiff's civil penalty claims under 49 App. § 1471(a)(3)(C)(i).  Further, under 49 App. § 1471(a)(3)(C)(iv), the court has exclusive jurisdiction of the plaintiff's claim for injunctive relief because this claim is based on the violation giving rise to the civil penalties at issue.

### II.  Exhaustion of Administrative Remedies

Section 1471(a)(1) specifies the circumstances in which civil penalties must be determined by the administrative agency:

> The amount of any such civil penalty which relates to the transportation of hazardous materials shall be assessed by the Secretary, or his delegate, upon written notice upon a finding of violation by the Secretary, after notice and an opportunity for a hearing. . . . The amount of any such civil penalty for any violation of any provision of subchapter IV of this chapter, or any rule, regulation, or order issued thereunder, or under section 1482(i) of this title, or any term, condition, or limitation of any permit or certificate issued under subchapter IV of this chapter shall be assessed by the Board only after notice and an opportunity for a hearing and after written notice upon a finding of violation by the Board.

Section 1471(a)(1) requires an administrative assessment of a civil penalty

> in only three instances: (1) if the penalty 'relates to the transportation of hazardous materials,' (2) if the penalty is imposed for 'violation of any provision of subchapter IV of this chapter,' which relates to the economic regulation of air carriers, or (3) if the penalty issues for violations under 49 U.S.C. §

10

> 1482(i), which governs establishment of through service
> and joint fares within the states of Alaska and Hawaii
> and for overseas flights. 49 U.S.C. § 1471(a)(1); see
> United States v. Kilpatrick, 759 F.2d 1250, 1252-53
> (5th Cir. 1985).

United States v. Gaunce, 779 F.2d 1434, 1436 (9th Cir. 1986).

The defendants argue that the NTSB must impose a civil penalty before the jurisdiction of the federal district court can be established under 49 U.S.C. § 1471(a). Defendants' Motion to Dismiss at 1-3.

Where a civil penalty is sought for alleged violations of regulations promulgated under subchapter VI, no administrative assessment is required by section 1471(a)(1). Gaunce, 779 F.2d at 1436.

Because the civil penalties at issue in this case are sought for alleged violations of regulations promulgated under subchapter VI, the court finds that no administrative assessment of such penalties is required for the court to excercise jurisdiction pursuant to 49 App. U.S.C.A. §§ 1471(a)(3)(C)(i) and (iv).

### III. The "Stale Complaint" Rule

The defendants next assert that the plaintiff's action is barred by the NTSB's "stale complaint" rule, set forth at 49 C.F.R. § 821.33 (1994), because the complaint was brought more than six months after the offenses at issue allegedly occurred.

11

> The provisions of [49 U.S.C. Part 821] govern all air
> safety proceedings, including proceedings involving
> airman medical certification, before a law judge on
> petition for review of the denial of any airman
> certificate or on an appeal from any order of the [FAA]
> Administrator amending, modifying, suspending or
> revoking any certificate. The provisions of this part
> also govern all proceedings on appeal from an order of
> the Administrator imposing a civil penalty on a flight
> engineer, mechanic, pilot, or repairman, where the
> underlying violation occurred on or after August 26,
> 1992, and all proceedings on appeal to the Board from
> any order or decision of a law judge.

49 C.F.R. § 821.2 (1994).

Section 821.33 is a provision governing administrative air safety proceedings which does not apply to claims properly brought in a federal district court. Because the plaintiff's claims are properly before the court pursuant to 49 App. U.S.C.A. § 1471(a)(3)(C)(i) and (iv), section 821.33 does not apply to the plaintiff's action.

IV. Double Jeopardy

The defendants next assert that "Emerson's rights to defend properly are before an administrative law judge until the FAA's complaint has been adjudicated. To subject him to this Court's jurisdiction now places him in the unconstitutional position of 'double jeopardy.'" Defendants' Motion to Dismiss, ¶ 7. Further, they contend that "[b]y seeking such a penalty simultaneously with an order of emergency revocation the

12

Plaintiff is pursuing an excessive degree of enforcement amounting to harassment and intimidation.  Id., ¶ 3.

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989).  Under the Double Jeopardy Clause, "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment."  Halper, 490 U.S. at 448.  A civil penalty qualifies as punishment in "the rare case" where the penalty is "overwhelmingly disproportionate" to the damage caused.  Halper, 490 U.S. at 449.  "Removal of persons whose participation in [government] programs is detrimental to public purposes is remedial by definition."  United States v. Bizzell, 921 F.2d 263, 267 (10th Cir. 1990).

The FAA revoked the airman certificate of Alan Emerson for alleged violations of federal regulations designed to promote air safety.  The violation of such regulations would obviously be detrimental to public purposes.  Therefore, the court finds that the FAA's revocation of Emerson's air certificate was remedial rather than punitive and the Double Jeopardy Clause is not

13

implicated by the plaintiff federal claims.  Further, and nothwithstanding the court's finding as to the emergency order of revocation, the court finds that the Double Jeopardy Clause is not implicated in this case because the civil penalties sought by the plaintiff are not overwhelmingly disproportionate to the damage inherent in the alleged conduct of the defendants.

<u>Conclusion</u>

For the reasons set forth above, the court finds that it may properly excercise subject matter jurisdiction over the plaintiff's action.  The motion to dismiss (document no. 11) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

March 29, 1995

cc:  Patrick M. Walsh, Esquire
     John P. Kalled, Esquire

14